FILED by _____ D.C.

**Sep 1, 2016**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. – FT. LAUD.

**UNITED STATES DISTRICT COURT**
SOUTHERN DISTRICT OF FLORIDA

# 16-60227-CR-HURLEY/HOPKINS

CASE NO. _____

18 U.S.C. § 1962(d)
18 U.S.C. § 1956(h)
18 U.S.C. § 371
18 U.S.C. § 1001(a)(2)
26 U.S.C. § 7206(1)

**UNITED STATES OF AMERICA**

v.

**CLIFFORD CARROLL,
TODD STEPHENS,
TIM CLINTON,
MICHAEL KENNA,
JOEL MCDERMOTT,
TODD HANSON,
LISA GOLDBERG,
CHRISTOPHER MUCHA,
IAN FLASTER,
KYLE O'BRIEN,
RHETT GORDON,
WILLIAM EARL,
FREDERICK THOMAS GIAMPA,
PETER WILLIAMS,
JOHN JOHNSON, and
BRETT NADEL,**

      **Defendants.**

_____/

## INFORMATION

The United States Attorney charges that:

## GENERAL ALLEGATIONS

At all times material to this Information:

## Enterprise Entities

1.     NuMedCare LLC (hereinafter referred to as "NuMed") was a Florida Corporation alleged to be a provider of managed services for pharmacies and maintained an office located at 4800 North Federal Highway, Bldg. B, Suite 200, Boca Raton, Florida.    NuMed was incorporated in or about March 2013.    NuMed alleged that it was engaged in pharmacy development, compliance, training, staffing and education, among other services.    NuMed alleged that it offered such services to compounding pharmacies.

2.     ClinicalCorp LLC (hereinafter ClinicalCorp) was a Nevada-based domestic limited liability corporation alleged to be a software developer for the medical industry and maintained an office at 4800 North Federal Highway, Suite B200, Boca Raton, Florida and was incorporated in or about August 20, 2014.    ClinicalCorp alleged that it contracted with physicians to purchase data to be used to develop software for medical coding.

3.     RX of Boca, LLC was a Florida domestic limited liability company located at 5801 North Federal Highway, Boca Raton, Florida.    RX of Boca was incorporated in or about July 2010.    RX of Boca was a failing pharmacy when, in or around 2013, RX of Boca entered into an agreement with NuMed wherein NuMed would refer prescriptions to RX of Boca for compounded cream medications for the treatment of pain, wounds, scars, eczema, and other medical conditions.    RX of Boca delivered the compounded cream medications in interstate commerce by private or commercial interstate carrier.

4.     A compounding pharmacy located in Dallas, Texas (hereinafter referred to as "the Texas Compounding Pharmacy") was incorporated in or about December 2011.    In or about 2014, the Texas Compounding Pharmacy was a failing pharmacy on the verge of going out of

2

business when the Texas Compounding Pharmacy entered into an agreement with NuMed wherein NuMed would refer prescriptions to the Texas Compounding Pharmacy for compounded cream medications for the treatment of pain, wounds, scars, eczema, and other medical conditions. The Texas Compounding Pharmacy delivered the compounded cream medications in interstate commerce by private or commercial interstate carrier.

### The Defendants

5.      Defendant **Clifford Carroll** (hereinafter referred to as "**Carroll**") was the Chief Enforcement Officer (CEO) of NuMed and was the organizer/supervisor of the criminal enterprise.

6.      Defendant **Todd Stephens** (hereinafter referred to as "**Stephens**") was the Chief Financial Officer (CFO) of NuMed and used criminal proceeds to purchase assets on behalf of the criminal enterprise.

7.      Defendant **Timothy Clinton** (hereinafter referred to as "**Clinton**") was the Chief Operating Officer (COO) of NuMed and was responsible for supervising the daily operations of NuMed and the criminal enterprise.

8.      Defendants **Michael Kenna** (hereinafter referred to as "**Kenna**") and **Joel McDermott** (hereinafter referred to as "**McDermott**"), were sales representatives employed by NuMed. Defendants **Kenna** and **McDermott** facilitated the marketing of the compounded medications and the solicitation of patients and corrupt physicians.

9.      Defendants **Kyle O'Brien** (hereainfer referred to as "**O'Brien**" and **Ian Flaster** (hereinafter referred to as "**Flaster**") were sales representatives employed by NuMed. Defendants **O'Brien** and **Flaster** facilitated the marketing of the compounded medications and the solicitation of patients.

10.    Defendant **Todd Hanson** (hereinafter referred to as "**Hanson**") was employed by NuMed, but his chief responsibilities involved the formation and oversight of the operations of ClinicalCorp. Defendant **Hanson** used the operation of ClinicalCorp to conceal payments to corrupt physicians.

11.    Defendant **Christopher Mucha** (hereinafter referred to as ("**Mucha**") was employed for some time by NuMed, but was eventually employed full-time as a ClinicalCorp employee.   Defendant **Mucha** was an intermediary between ClinicalCorp and corrupt physicians in their program.

12.    Defendant **Rhett Gordon** (hereinafter referred to as "**Gordon**") was employed in various positions at NuMed, including as a web developer.   **Gordon** operated a call center that used personal information obtained from various sources to solicit potential patients to approve fax transmissions of preprinted prescriptions for compounded medications.

13.    Defendant **William Earl** (hereinafter referred to as "**Earl**") was the nominee owner of RX of Boca.   In or about 2013, RX of Boca was a failing pharmacy when RX of Boca and **Earl** entered into an agreement with NuMed wherein NuMed would refer prescriptions to RX of Boca for compounded cream medications for the treatment of pain, wounds, scars, eczema, migraine, fungal, among others, including metabolic formulas.

14.    Defendant **Lisa Goldberg** (hereinafter referred to as "**Goldberg**") maintained several businesses which were used by **Goldberg** and co-conspirators to facilitate illegal payments to physicians in exchange for the continued issuance of prescriptions for compounded medications.

15.    Defendant **Frederick Thomas Giampa** (hereainafter referred to as "**Giampa**") was employed by a corrupt physician and other co-conspirators as an alleged compliance officer.

4

Defendant **Giampa's** position as a compliance officer was intended to disguise the illegal payments to corrupt physicians.

16.     Defendant **Peter Williams** (hereinafter referred to as "**Williams**") was a podiatrist licensed to practice in the State of Florida.   Defendant **John Johnson** (hereinafter referred to as "**Johnson**") was a doctor specializing in anesthesiology and pain management and was licensed to practice in the State of Pennsylvania.   Defendants **Williams,** and **Johnson** received illegal compensation in exchange for issuing prescriptions for compounded medications regardless of medical necessity.

17.     Defendant **Brett Nadel** (hereainafter referred to as "**Nadel**") was a chiropractor licensed to practice in the State of Georgia.   Defendant **Nadel** acted primarily as a solicitor of other physicians on behalf of ClinicalCorp and received a portion of the adjudications for compound medications prescribed by physicians he solicited.

## Compounded Medications

18.     A compounded drug product is a drug product compounded for an identified individual patient based on the receipt of a valid prescription order that a compounded product is necessary for the identified patient.

19.     A compounded medication is a customized combination of medicines initiated and prescribed by a physician based upon the physician-patient-pharmacist relationship and taking into consideration the particular patient's diagnoses, medical condition, individual health factors and reaction to other medications, and is prescribed after a determination that commercially available medications are not as beneficial or may be inappropriate and/or harmful to the patient.   The

5

ingredients of such compounded medication are mixed together by the compounder in the exact strength and dosage required by an individual patient.

20.    A compounded medication is prepared by a licensed pharmacist and/or a licensed physician who combines, mixes, or alters ingredients of a drug to create a medication tailored to fit the unique needs of an individual patient in response to a valid prescription and is not prepared in bulk quantities for mass distribution.

21.    The compounder is responsible for compounding preparations of acceptable strength, quality and purity and in accordance with the prescription.   The dose, safety and intended use of the preparation must be evaluated by the compounder for suitability in terms of the chemical and physical properties of the components, the dosage form, the therapeutic appropriateness and route of administration, including local and systematic biological disposition.

22.    The compounder is responsible for judging the suitability of the prescriptions in terms of its safety and intended use and dose for the patient.   The compounder performs the calculations to determine the quantities of the ingredients needed.   The compounder is responsible for patient counseling and must be accessible for patient inquiries regarding administration of the drug, including storage, use of handling, possible side effects and contrary drug interactions.

23.    Physicians issuing valid prescriptions for compounded medications take into consideration the specific criteria for each patient including; age, weight, physical condition, symptoms and tolerance of medications.   Such physicians further take into consideration the side effects and contra-indicators of combining multiple medications into a single dose of a specially prepared compound.

6

24.     Physicians and pharmacists customize and individualize dosing amounts to best suit a patient's requirements.

25.     A valid prescription for compounded medication is initiated and issued by a physician.

26.     The U.S. Food and Drug Administration offers the following examples of compounding drugs:

> A. If a patient has an allergy and needs a medication to be made without a certain dye preservative;
>
> B. If an elderly patient or child can't swallow a pill and needs a medicine in a liquid form that is not otherwise available,
>
> C. If a patient needs a specifically tailored dosage strength.

27.     Because compounded pharmaceuticals are custom made to fit the unique needs of each patient, the U.S. Food and Drug Administration does not regulate or approve compounded medications and therefore does not verify the safety or effectiveness of compounded drugs.   Due to the unique and individualized nature of compounded medications, such medications are neither commercially available nor distributed in mass quantities.

28.     Compounding pharmacies typically buy drug ingredients from a wholesaler and then mix such ingredients in small quantities based upon a valid prescription issued by a physician and/or pharmacist for individual patients.   Florida State statue 64B16- 27.700(1)(a) permits the preparation of drugs by a compounder in anticipation of prescriptions based on routine, regularly observed prescribing patterns.

**Insurance Reimbursements**

29.   Tricare was a health care program of the United States Department of Defense (DoD) Military Health System that provided coverage for DoD beneficiaries world-wide, including active duty service members, National Guard and Reserve members, retirees, their families, and survivors.   Tricare was a "health care benefit program" as defined by 18 U.S.C. § 24(b). Tricare was a "Federal health care program" as defined by 42 U.S.C. §§ 1320a-7b(f), which affected commerce. Tricare provided coverage for certain prescription drugs, including certain compounded drugs, which were medically necessary and prescribed by a licensed physician.

30.   Private insurance providers offer health insurance benefits to individuals pursuant to contracts between such insurance providers and individuals.   The contracts specify the reimbursement for the agreed health care services provided therein.   The contracts by and large, require individuals to pay "co-pay" amounts as part of the reimbursement arrangements.   Such "co-pay" amounts are paid by individuals to health care service providers, including pharmacies. The private insurance providers reimburse health care service providers, including pharmacies, for the cost of goods and services, pursuant to the terms of the contracts.

31.   Insurance companies including private companies and Tricare, reimburse compounding pharmacies based upon the average wholesale price (hereinafter referred to as the "AWP") of the individual ingredients contained within the compounded medication.   The AWP is used for pricing and reimbursement of prescription drugs for both government and private insurance companies.

32.     The term "adjudication" is used to convey the acceptance and payment by an insurance provider of a prescription received from a pharmacy and issued by a physician.    This process is initiated when the prescription is electronically sent to the insurance provider.

33.     Compounding pharmacies receive the reimbursement proceeds generated by the sale of compounded medications from the insurance providers.

### Federal and State Laws

34.     Federal law prohibits receiving any payments for referring patients to receive any services under any Federal health care program, such as Tricare.    42 U.S.C. § 1320a-7b.

35.     Florida law prohibits offering to pay, paying, soliciting, or receiving any commission, bonus, rebate, kickback, or bribe, directly or indirectly, to induce the referral of patients to a health care provider or facility or in return for referring patients to a health care provider or facility.    Fla. Stat. §§ 817.505(1), 456.054(2).

36.     An application for a pharmacy permit in the State of Florida must include certain Information regarding each person who has an ownership interest of 5% or more and any person who, directly or indirectly, manages, oversees, or controls the operation of the pharmacy.    Fla. Stat. § 465.022(3)(a).

37.     Telemedicine means the practice of medicine by a licensed physician where patient care, treatment or services are provided via electronic communications.    Florida Administrative Code, Section 64B15-14.0081, states, in part, that, as of March 12, 2014, telemedicine shall not include the provision of health care services only through an audio only telephone.

9

## COUNT ONE
### Conspiracy to Commit Racketeering Activity
### (18 U.S.C. § 1962(d))

38.     The allegations set forth in the General Allegations Section are hereby re-alleged and incorporated as if set forth herein.

### THE ENTERPRISE

39.     NuMed, RX of Boca, the Texas Compounding Pharmacy, ClinicalCorp, and others known to the United States Attorney constituted an Enterprise within the meaning of Title 18, United States Code, Section 1961(4), that is, a group of individuals and entities associated in fact. The Enterprise constituted an ongoing organization, the members and associates of which functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise.

### THE CONSPIRACY

40.     Beginning at least in or about 2013 and continuing thereafter through at least in or about September 2015, the exact dates being unknown, in Broward and Palm Beach Counties, in the Southern District of Florida, and elsewhere, the defendant,

### CLIFFORD CARROLL,

being a person employed by and associated with the Enterprise, which Enterprise engaged in, and the activities of which affected interstate and foreign commerce, did knowingly, willfully and unlawfully combine, conspire, confederate and agree, with persons known and unknown to the United States Attorney, to violate Title 18, United States Code, Section 1962(c), that is to conduct and participate, directly and indirectly, in the conduct of the affairs of the Enterprise, through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961 (1) and (5) as set forth herein below.

10

## THE PATTERN OF RACKETEERING ACTIVITY

41.     The pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961 (1) and (5), through which the defendant and his co-conspirators agreed to conduct and participate in the conduct of the affairs of the Enterprise consisted of multiple acts indictable under:

A.     Title 18, United States Code, Section 1341 (Mail Fraud);

B.     Title 18, United States Code, Section 1343 (Wire Fraud);

C.     Title 18, United States Code, Section 1956 (Money Laundering and Conspiracy to Launder); and,

D.     Title 18, United States Code, Section 1957 (Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity).

42.     It was part of the conspiracy that the defendant agreed that a conspirator would commit at least two acts of racketeering in the conduct of the affairs of the Enterprise.

## PURPOSE AND OBJECTIVE OF THE ENTERPRISE

43.     The purpose and objective of the Enterprise was for defendant **Carroll** and other Enterprise members to unjustly enrich themselves through fraudulent means and mechanisms whereby prescriptions for compounded cream medications would be issued by physicians in exchange for illegal financial compensation, and submitted to insurance companies, without regard for medical necessity and to receive insurance reimbursement by means of fraud and deceit, and to distribute the illegally obtained proceeds to further promote the ongoing activities of the Enterprise.

11

## ROLES AND RESPONSIBILITIES

44.    **Carroll** established, organized, supervised, and managed the criminal Enterprise. Defendant **Carroll** devised a scheme to defraud insurance providers of significant reimbursement amounts for purported compounded medicines.   Defendant **Carroll** was aware that insurance providers reimbursed compounding pharmacies for the manufacture of compounded medicine, based upon the AWP of the ingredients thereof.   Defendant **Carroll** and another Enterprise member established NuMed in order to facilitate the fraud scheme.   Defendant **Carroll** and other Enterprise members selected ingredients to be used in the compounded medicines based upon the amount of money reimbursed by insurance providers for the ingredients and not based upon medical necessity.   The compounded medications were prepared in large quantities for mass distributions and were not individualized based on specific patient needs.   Defendant **Carroll** and other Enterprise members obtained control over and used RX of Boca and the Texas Compounding Pharmacy as nominee businesses to disguise and conceal their true ownership interests. Defendant **Carroll** and other Enterprise members employed sales representatives and marketers to solicit potential patients through the use of scripted talking points to request compounded prescriptions from their physicians. Without such prescriptions being initiated by the physicians, defendant **Carroll** and other Enterprise members devised mechanisms and means to illegally compensate corrupt physicians to issue prescriptions for the compounded medicines, without regard to medical necessity.   Defendant **Carroll** and other Enterprise members established and utilized ClinicalCorp in order to disguise the illegal compensation paid to physicians as payments for "data" collection. Such illegal compensation was in fact paid for the issuance of prescriptions for compounded medication.   Defendant **Carroll** and other Enterprise members split with other

12

co-conspirators the reimbursement proceeds fraudulently obtained from insurance providers. Defendant **Carroll** and other Enterprise members received substantial amounts of money through the fraud scheme and engaged in activity to create the appearance of legitimate business conduct and to conceal the fraud scheme. Defendant **Carroll** and other Enterprise members used proceeds obtained from the fraud scheme to purchase assets in order to facilitate and further promote the criminal activities of the Enterprise.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means used to accomplish the objectives of the conspiracy included, among others, the following:

### The Compound Medications

45.     Defendant **Carroll** and co-conspirators obtained financing to form NuMed in order to establish the fraud scheme to market compound medications.

46.     Co-conspirators obtained information regarding the compensation paid by insurance companies for the component ingredients contained within compounded cream medications for the treatment of pain, wound, scar, eczema, migraine, fungal, among others, including metabolic formulas.

47.     Co-conspirators obtained information regarding the process by which prescriptions issued by physicians for compounded medications would be adjudicated by insurance companies.

48.     Co-conspirators created formulas for the ingredients of compounded cream medications with the highest AWP, regardless of the medical necessity, and which the insurance companies adjudicated for the highest compensation.

13

49.   Co-conspirators abused prescription formularies in order to maximize profit by periodically adding and or changing ingredients to the formulas of the compounded creams in order to increase the adjudication received from the private insurance companies.

50.   Co-conspirators utilized ethoxydiglycol, a cosmetic grade solvent in the compounded medication, in order to substantially increase the adjudication amount and without regard for medical necessity.

51.   Co-conspirators "test billed" private insurance companies, that is, attempted to obtain approval for adjudication of compounded medications, prior to the issuance of a physician prescription.

52.   Co-conspirators received compensation from private insurance companies up to $31,000 for a tube of compounded cream medications.

### The Use of Pharmacy Owners As Nominees

53.   Co-conspirators secretly purchased privately owned pharmacies which were failing businesses due to insufficient sales and other reasons.

54.   Co-conspirators used the owners of such acquired private pharmacies, including RX of Boca and the Texas Compounding Pharmacy, to act as nominee owners in order to conceal the true ownership interest of the co-conspirators and to make use of the licenses of the private pharmacy owners.

55.   Co-conspirators at NuMed exercised complete control over the operation of RX of Boca and the Texas Compounding Pharmacy, including but not limited to; hiring of employees, payroll, billing, the handling of customer complaints, formulation and selection of ingredients used in the compounded cream medications.

14

56.    The compounded cream medications were not issued on a limited basis for specific patients on an individualized capacity, nor based upon routine regularly observed prescribing patterns, but rather prepared in bulk quantities by RX of Boca and the Texas Compounding Pharmacy for mass distribution and sale.

57.    Co-conspirators accessed and controlled the pharmacy computer system, RX30, maintained by RX of Boca.

58.    Co-conspirators NuMed created false billing documents and contracts to conceal the undisclosed ownership of RX of Boca.

59.    Co-conspirators provided financing for the purchase of compounding equipment for the private pharmacies which they controlled.

60.    Co-conspirators employed at RX of Boca and the Texas Compounding Pharmacy would refer patient's questions and complaints to NuMed in order to facilitate the fraud.

61.    Co-conspirators purchased or attempted to purchase companies which supplied bulk quantities of ingredients used in the preparation of compounded cream medications in order to ensure a continuous supply of the ingredients with the highest AWP.

62.    From in or about 2013 and continuing through in or about 2015, co-conspirators split amongst themselves the approximately $175 million received in insurance adjudications of compounded medications.

**Marketing of Illegal Activity**

63.    Co-conspirators created websites for NuMed and RX of Boca which contained false or misleading information and which were used to create the appearance of legitimacy.

15

64.    Co-conspirators falsely claimed to be employees of RX of Boca in order to attempt to take advantage of state and federal laws allowing pharmacy employees to obtain proceeds from the sale of medications.

65.    When the amount of reimbursements became excessively large, co-conspirators incorporated limited liability corporations (LLC'S) to conceal their association with NuMed, to receive the proceeds of the fraudulent prescription scheme, to insulate themselves, and to create the appearance of legitimacy.

## The Call Centers

66.    Co-conspirators affiliated with individuals who had access to telephone marketing facilities known as "call centers" in order to solicit potential patients, including veterans, without a referral from a medical practitioner.

67.    Co-conspirators procured or caused to be procured from the internet and elsewhere, personal information regarding potential patients who had previously been prescribed medications and/or medical devices, such as diabetic test strips and which health insurance plans that were known to pay for compounding medications.

68.    Co-conspirators telephonically contacted potential patients and read from prepared scripts in which such patients would be solicited to authorize the marketers to fax preprinted prescriptions to the patient's physicians, without prior request or referral from a medical professional.    Such marketers used false and misleading statements designed to induce the potential patients into approving the faxing of the preprinted prescriptions.

69.     Co-conspirator marketers illegally shared in the compensation paid by the private insurance companies in return for telephonically marketing the compounded cream medications to potential patients.

70.     Co-conspirators issued thousands of faxes, known as "blast faxes," to physicians' offices allegedly on behalf of patients, requesting the issuance of prescriptions for compounded cream medications using preprinted prescriptions.   Such preprinted prescriptions would be faxed without prior referral or request by the physicians and were not initiated by such physicians.

71.     Such faxed preprinted prescriptions and accompanying documents falsely informed the physicians' offices that the request had been initiated by the patient rather than by the call center employee.

### The Corrupt Co-conspirator Physicians

72.     Sales representatives and other co-conspirators sought affiliations with individuals who had access to physicians for the purpose of soliciting prescriptions for the compounded medications regardless of medical necessity.

73.     Co-conspirators agreed to solicit individuals to convince physicians to prescribe the compounded medications in exchange for illegal compensation and /or benefits, regardless of medical necessity.

74.     Co-conspirators established ClinicalCorp, which paid corrupt physicians for allegedly providing data to be used to create software to facilitate the change from LCD 9 to LCD 10 medical codes, when in truth and in fact, such payments were illegal compensation for the issuance of prescriptions by the corrupt physicians for compounded cream medications.

75.    Co-conspirators created false and fictitious documents to make it appear that the corrupt physicians and ClinicalCorp were engaged in legitimate business transactions.

76.    Co-conspirators telephonically marketed compounded medications to potential patients and thereafter direct such patients to telephonically contact co-conspirator nurses and corrupt physicians to engage in a telemedicine consultation.

77.    Co-conspirators agreed to compensate corrupt physicians to telephonically consult with and diagnose patients and to issue prescriptions for compounded cream medications regardless of medical necessity.

78.    Corrupt co-conspirator physicians issued prescriptions for compounded medications to patients regardless of medical necessity and in exchange for illegal compensation received in various forms.   The illegal compensation included, cash, gift cards, the payment of physician business expenses, reduced cost supplies, free consulting advice, and assistance in the acquisition of financial assistance.

79.    Co-conspirators provided pre-printed prescription pads, which authorized several automatic refills of the compounded medications, to corrupt coconspirator physicians in order to facilitate and expedite the prescribing of compounded cream medications and to bill the insurance providers.

80.    Co-conspirator corrupt physicians transmitted prescriptions to NuMed marketing representatives rather than the patients named on such prescriptions.

**Family and Friends Program**

81.    Co-conspirators employed at NuMed solicited family, friends, and associates to request prescriptions for compounded medications from a corrupt co-conspirator physician, and

others, regardless of medical necessity, and to split the adjudicated money received from the private insurance companies. Such activity became known in NuMed as collecting, "bonuses" and resulted in substantial compensation paid to co-conspirators.

## Warnings From Attorneys

82.   Co-conspirators retained outside counsel in order to issue attorney opinion letters to falsely create the appearance of legitimacy for NuMed, RX of Boca, ClinicalCorp and other related businesses. The co-conspirators failed to inform outside counsel of the facts and circumstances of the fraud scheme.

83.   In addition to retaining outside counsel, in or about 2013, the co-conspirators hired in-house counsel. After NuMed's in-house counsel became aware that the activities of NuMed violated the Patient Brokering Act and other criminal statutes, the in-house counsel continued to assist co-conspirators in the operation of NuMed by providing legal advice and the preparation of legal documents in order to conceal and disguise the criminal activity.

84.   After being warned by NuMed's in-house counsel that NuMed was in violation of Federal and State law, co-conspirators made it appear that the proceeds received by NuMed from RX of Boca were for various expenses of operating the pharmacy in order to disguise that the co-conspirators were continuing to operate in the same unlawful manner.

## Other Acts In Furtherance of the Criminal Conspiracy

85.   Defendants and other co-conspirators engaged in conduct designed to conceal the fraudulent activity and to create the appearance of a legitimate business practice.

86.   Co-conspirators concealed from the insurance companies the fact that the prescriptions for the compounded medications were not initiated by physicians but rather by co-

conspirators.

87.   Co-conspirators discussed, among themselves and with other persons, those insurance companies which had previously authorized prescriptions for compounded cream medications and such conspirators would discuss avoiding those insurance companies which questioned the need for compounded medications.

88.   Co-conspirators sent prescriptions which had previously been denied adjudication by insurance providers, to other compound pharmacies for additional attempts at adjudication.

89.   Co-conspirators would arrange by various means, including gift cards, to pay the required co-pay amounts of patients for the compounded cream medications in order to prevent scrutiny from the insurance companies.

90.   Co-conspirators offered an alternative cash payment of approximately sixty dollars per tube for compounded cream medication to those patients who complained about the cost of the medication and the amount of their co-pays.

91.   Co-conspirators used mail, wire and telephone facilities in interstate commerce to receive reimbursements and to otherwise carry-on, facilitate and execute the scheme and artifice to defraud the insurance providers.

92.   Co-conspirators received significant compensation from the fraud scheme and deposit such funds into bank accounts maintained in federally insured financial institutions and use said funds to promote the ongoing criminal activity by paying corrupt doctors, marketing representatives, and call center employees, among other promotional expenses.   The conspirators attempted to conceal the source of such compensation through the use of foreign financial institutions and transactions.

93.    Pursuant to information provided by NuMed's in-house counsel, employees of NuMed established limited liability corporations (LLC's) to receive the proceeds generated by the fraud activity in order to disguise the criminal conduct.

94.    During the course of the conspiracy, co-conspirators caused the payment of approximately 175 million dollars from insurance providers.

All in violation of Title 18, United States Code, Section 1962(d).

## COUNT TWO
### Conspiracy to Launder Monetary Instruments
### (18 U.S.C. § 1956(h))

95.    The allegations set forth in the General Allegations Section are hereby re-alleged and expressly incorporated as if set forth herein.

96.    The Manner and Means of the Conspiracy section set forth in Count I of this Information is hereby re-alleged and expressly incorporated as if set forth herein.

97.    From in or about 2013 through in or about September 2015, in the Southern District of Florida, and elsewhere, the defendants,

**TODD STEPHENS,**
**TIM CLINTON,**
**MICHAEL KENNA,**
**JOEL MCDERMOTT,**
**TODD HANSON,**
**and**
**LISA GOLDBERG,**

did knowingly combine, conspire, and agree with each other and with other persons known and unknown to the United States Attorney to commit offenses against the United States in violation of Title 18, United States Code, Section 1957, to wit: to knowingly engage and attempt to engage, in monetary transactions by, through or to a financial institution, affecting interstate and foreign

21

commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, in violation of Title 18, United States Code, Section 1957.

It is further alleged that the specified unlawful activity is mail fraud and wire fraud, in violation of Title 18, United States Code, Sections 1341 and 1343.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT THREE
### Conspiracy to Commit an Offense Against the United States
### (18 U.S.C. § 371)

98.     The allegations set forth in the General Allegations Section are hereby re-alleged and expressly incorporated as if set forth herein.

99.     The Manner and Means of the Conspiracy section set forth in Count I of this Information are hereby re-alleged and expressly incorporated as if set forth herein.

100.    From in or about 2013 through in or about September 2015, in the Southern District of Florida, and elsewhere, the defendants,

**CHRISTOPHER MUCHA,**
**KYLE O'BRIEN,**
**RHETT GORDON,**
**IAN FLASTER,**
**WILLIAM EARL,**
**FREDERICK THOMAS GIAMPA,**
**PETER WILLIAMS,**
**JOHN JOHNSON,**
**and**
**BRETT NADEL,**

did knowingly combine, conspire, confederate, and agree with each other and with persons known and unknown to the United States Attorney, to commit an offense against the United States of America, that is, to devise and intend to devise a scheme and artifice to defraud and to obtain

22

property by means of false and fraudulent pretenses, representations, and promises, for the purpose

of executing, and attempting to execute, such scheme and artifice to defraud and for obtaining

property by means of false and fraudulent pretenses, representations, and promises, to (a)

knowingly transmit and cause to be transmitted by means of wire communication in interstate and

foreign commerce, certain signs, signals, and sounds, in violation of Title 18, United States Code,

Section 1343 (Wire Fraud), and (b) to place in any post office or authorized depository for mail

matter, any matter or thing to be sent or delivered by the Postal Service, and to cause to be

deposited any matter or thing to be sent by private or commercial interstate carrier, in violation of

Title 18, United States Code, Section 1341 (Mail Fraud).

## OVERT ACTS

101. In furtherance of the conspiracy and to achieve the purpose and object thereof, the

defendants and their co-conspirators committed and caused to be committed in the Southern

District of Florida and elsewhere, the following acts, among others:

A. On or about April 8, 2015, defendant **Mucha** caused Muchas Marketing, LLC to be incorporated in the State of Florida, which listed defendant **Mucha** as president.

B. On or about June 5, 2015, NuMed made a direct deposit payment to the account of Muchas Marketing, LLC at Wells Fargo Bank in the amount of $84,298.

C. On or about January 21, 2015, NuMed issued a check payable to Safe Health Solutions, LLC, a company owned by defendant **Flaster**, in the amount of $249,366.65.

D. On or about January 6, 2015, defendant **Earl** caused a funds transfer to be made from an account of RX of Boca, LLC at PNC Bank to an account of NuMed at PNC Bank in the amount of $8,000,000.

E. On or about June 27, 2013, defendant **Gordon** caused Devqwest, Inc. to be incorporated in the State of Florida, which listed defendant **Gordon** as the sole shareholder.

F. On or about October 14, 2014, NuMed issued a check payable to Devqwest, Inc. in the amount of $59,289.56.

G.     On or about August 5, 2014, defendant **O'Brien** caused KPO Medical Consultants, LLC to be incorporated in the State of Florida, which listed defendant **O'Brien** as Managing Member.

H.     On or about January 16, 2015, NuMed issued a check payable to KPO Medical Consultants, LLC in the amount of $217,808.77.

I.     On or about August 15, 2014, defendant **Johnson** signed a prescription for patient G.A. for a compounded pain medication, which prescription was adjudicated by the insurance company for $22,717.66.

J.     On or about March 20, 2015, defendant **Williams** signed a prescription for patient F.P. for a compounded medication, which prescription was adjudicated by the insurance company for $26,748.67.

K.     On or about April 14, 2014, a wire transfer in the amount of $25,000 was sent from an account of a business owned by defendant **Carroll** to an account owned by defendant **Williams** at Bank of America.

All in violation of Title 18, United States Code, Section 371.

## COUNT FOUR
### False Statements
### (18 U.S.C. § 1001(a)(1))

102.  On or about March 16, 2016, in Broward County, in the Southern District of Florida, in a matter within the jurisdiction of the Drug Enforcement Administration, an agency of the executive branch of the United States Government, the defendant,

### TODD HANSON,

did knowingly and willfully falsify conceal and cover up by means of a scheme and device a material fact, in that the defendant, during a debriefing regarding his personal Information and background conducted by a Special Agent of the Drug Enforcement Administration, did omit relevant, pertinent and material facts concerning his personal Information and background, to wit; that he has previously falsely claimed that he held a doctorate degree in applied mathematics, when

24

in truth and in fact, and as the defendant then and there well knew, such information would have been material and relevant to the government, in violation of Title 18, United States Code, Section 1001(a)(1).

**COUNT FIVE**
**Making False Tax Return**
**26 U.S.C § 7206 (1)**

103.  On or about October 12, 2015, in Palm Beach County, in the Southern District of Florida, the defendant,

**CLIFFORD CARROLL,**

a resident of Boca Raton, Florida, did willfully make and subscribe to a United States Individual Income Tax Return, Form 1040, for tax year 2014, which was verified by a written declaration that it was made under the penalties of perjury and which he did not believe to be true and correct as to every material matter.   Within the Form 1040, which was filed with the Internal Revenue Service, the defendant claimed business expenses in the form of legal and professional fees for approximately $202,879 and business expenses in the form of wages for approximately $473,368, whereas, as he then and there knew, he did not incur such business expenses. Specifically, approximately $202,000 of said legal and professional services was actually non-deductible wire transfers issued to a co-conspirator, and approximately $473,368 of said wages was actually money from checks that co-conspirators cashed and gave back to the defendant, pursuant to the scheme set forth in Counts 1 through 3, above.

In violation of Title 26, United States Code, Section 7206(1).

## FORFEITURE ALLEGATION #1
### (Conspiracy to Commit Racketeering Activity)

1.      Upon conviction of a violation of Title 18, United States Code, Section 1962(d), as set forth in Count 1 of this Information, the defendant, **CLIFFORD CARROLL,** shall forfeit to the United States pursuant to Title 18, United States Code, Section 1963:

    A. Any interest defendant **CARROLL** acquired or maintained in violation of Title 18, United States Code, Section 1962;

    B. Any interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over, any enterprise which defendant **CARROLL** established, operated, controlled, conducted, or participated in the conduct of, in violation of Title 18, United States Code, Section 1962; and

    C. Any property constituting, or derived from, any proceeds which defendant **CARROLL** obtained, directly or indirectly, from racketeering activity, in violation of Title 18, United States Code, Section 1962.

2.      The specific property to be forfeited includes, but is not limited to:

    A. The sum of $175,000,000, which represents the amount of proceeds involved in, or traceable to the violation alleged in Count 1 of this Information, including but not limited to;

    B. One commercial building suite located at 4800 N. Federal Highway, Suite B-200, Boca Raton, Florida 33431;

    C. One commercial building suite located at 4800 N. Federal Highway, Suite A-300, Boca Raton, Florida 33431;

    D. One commercial building suite located at 4800 N. Federal Highway, Suite A-302, Boca Raton, Florida 33431;

    E. One commercial building suite located at 4800 N. Federal Highway, Suite A-306, Boca Raton, Florida 33431;

    F. One commercial building located at 3010 North Military Trail, Boca Raton, FL 33431;

    G. One single family residence located at 3981 Troon Circle, Broomfield, Colorado 80023;

26

H. $1,176,241.20 seized from Vizionary Marketing, LLC., TD Bank account #4306471519;

I. $560,000.00 seized from Attix, LLC., SunTrust Bank account #1000141414887;

J. $658,189.21 seized from NuMedCare LLC., PNC Bank account #12-0438-7109;

K. $8,670.22 seized from NuMed Alliance Inc. PNC Bank account #12-0438-7029;

L. $5,819.14 seized from NuMed Leasing Inc., PNC Bank account #12-1545-8865;

M. $5,273.75 seized from NuMedCare LLC., PNC Bank account #12-1651-2472;

N. $100,192.85 seized from NuMedCare LLC., PNC Bank account #12-0438-7192;

O. $85,504.05 seized from NuMed API LLC., PNC Bank account #12-0438-7117;

P. $97,436.05 seized from NuMed RX LLC., PNC Bank account #12-0438-6747;

Q. $10,025.32 seized NM Venture Group LLC., from PNC Bank account #12-0438-6253;

R. $39,781.27 seized from NuMed Property LLC., PNC Bank account #12-0438-7096;

S. $991.26 seized from NuMed Entertainment LLC., PNC Bank account #12-1545-8806;

T. $952.00 seized from C Boca Capital LLC., PNC Bank account #12-1545-8881;

U. $45,347.46 seized from Carroll, Clifford B. Carroll and Kader BB&T Bank account #1100004823158;

V. $39,728.44 seized from NuMedCare LLC., JP Morgan Chase Bank account #522675318;

W. $635,931.78 seized from the RX of Boca, LLC., PNC Bank account #12-0438-7133;

X. $2,982.83 seized from the RX of Boca, LLC., PNC Bank account # 12-1880-9691; and

Y. $87,420.92 seized from the C&B Property Management, Inc., Wells Fargo account # 2000049752184.

Z. $887,875.20 seized from TDC Consultants Inc., JP Morgan Chase Bank account # 526219873

27

3.    If any of the property described above, as a result of any act or omission of defendant

**CARROLL**:

      a.    cannot be located upon the exercise of due diligence;
      b.    has been transferred or sold to, or deposited with, a third party;
      c.    has been placed beyond the jurisdiction of the court;
      d.    has been substantially diminished in value; or
      e.    has been commingled with other property which cannot be divided without difficulty,

then the United States of America shall be entitled to forfeiture of substitute property pursuant to

Title 18, United States Code, Section 1963(m).

### FORFEITURE ALLEGATION #2
### (Conspiracy to Launder Monetary Instruments)

1.    Upon conviction of a violation of Title 18, United States Code, Section 1956(h), as

set forth in Count 2 of this Information, the defendants, **TODD STEPHENS, TIM CLINTON,**

**MICHAEL KENNA, JOEL MCDERMOTT, TODD HANSON, and LISA GOLDBERG,**

shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(1), any

property, real or personal, involved in the offense, and any property traceable to such property.

The specific property to be forfeited includes, but is not limited to, the following:

A.  The sum of $175,000,000, which represents the amount of proceeds involved in, or traceable to the violation alleged in Count 2 of this Information, and for which the above-named defendants, and each of them, are jointly and severally liable;

B.  One commercial building suite located at 4800 N. Federal Highway, Suite B-200, Boca Raton, Florida 33431;

C.  One commercial building suite located at 4800 N. Federal Highway, Suite A-300, Boca Raton, Florida 33431;

D.  One commercial building suite located at 4800 N. Federal Highway, Suite A-302, Boca Raton, Florida 33431;

28

E. One commercial building suite located at 4800 N. Federal Highway, Suite A-306, Boca Raton, Florida 33431;

F. One commercial building located at 3010 North Military Trail, Boca Raton, FL 33431;

G. One single family residence located at 3981 Troon Circle, Broomfield, Colorado 80023;

H. One single family residence located at 189 Myron Drive, Zephyr Cove, Nevada 89448, also identified as APN:1318-03-111-011;

I. $1,176,241.20 seized from Vizionary Marketing, LLC., TD Bank account #4306471519;

J. $560,000.00 seized from Attix, LLC., SunTrust Bank account #1000141414887;

K. $658,189.21 seized from NuMedCare LLC., PNC Bank account #12-0438-7109;

L. $8,670.22 seized from NuMed Alliance Inc. PNC Bank account #12-0438-7029;

M. $5,819.14 seized from NuMed Leasing Inc., PNC Bank account #12-1545-8865;

N. $5,273.75 seized from NuMedCare LLC., PNC Bank account #12-1651-2472;

O. $100,192.85 seized from NuMedCare LLC., PNC Bank account #12-0438-7192;

P. $85,504.05 seized from NuMed API LLC., PNC Bank account #12-0438-7117;

Q. $97,436.05 seized from NuMed RX LLC., PNC Bank account #12-0438-6747;

R. $10,025.32 seized NM Venture Group LLC., from PNC Bank account #12-0438-6253;

S. $39,781.27 seized from NuMed Property LLC., PNC Bank account #12-0438-7096;

T. $991.26 seized from NuMed Entertainment LLC., PNC Bank account #12-1545-8806;

U. $952.00 seized from C Boca Capital LLC., PNC Bank account #12-1545-8881;

V. $45,347.46 seized from Carroll, Clifford B. Carroll and Kader BB&T Bank account #1100004823158;

W. $39,728.44 seized from NuMedCare LLC., JP Morgan Chase Bank account #522675318;

X.   $635,931.78 seized from the RX of Boca, LLC., PNC Bank account #12-0438-7133;

Y.   $2,982.83 seized from the RX of Boca, LLC., PNC Bank account # 12-1880-9691; and

Z.   $87,420.92 seized from the C&B Property Management, Inc., Wells Fargo account # 2000049752184;

AA.   SunTrust Bank Cashier's Checks # 0738133119 & 0738133146 with combined amount of $2,600,684.95, seized from Michael Kenna; and

BB.   Pershing Bank Cashier's Check # 4019677185, in the amount of $4,950,000.00, seized from Michael Kenna.

2.   If any of the property described above, as a result of any act or omission of defendants

**TODD STEPHENS, TIM CLINTON, MICHAEL KENNA, JOEL MCDERMOTT, TODD HANSON, and LISA GOLDBERG:**

a.   cannot be located upon the exercise of due diligence;
b.   has been transferred or sold to, or deposited with, a third party;
c.   has been placed beyond the jurisdiction of the court;
d.   has been substantially diminished in value; or
e.   has been commingled with other property which cannot be divided without difficulty,

then the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1).

### FORFEITURE ALLEGATION #3
### Conspiracy to Commit an Offense Against the United States

1.   Upon conviction of Count 3, an offense in violation of Title 18, United States Code, Section 371, the defendants, **CHRISTOPHER MUCHA, KYLE O'BRIEN, RHETT GORDON, IAN FLASTER, WILLIAM EARL, FREDERICK THOMAS GIAMPA, PETER WILLIAMS, JOHN JOHNSON, and BRETT NADEL,** shall forfeit to the United States

30

pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violation. The property to be forfeited includes, but is not limited to, the following:

A. The sum of $175,000,000, which represents the amount of proceeds which constitutes or was derived from Count 3 of this Information, and for which the above-named defendants, and each of them, are jointly and severally liable.

B. $1,176,241.20 seized from Vizionary Marketing, LLC., TD Bank account #4306471519;

C. $560,000.00 seized from Attix, LLC., SunTrust Bank account #1000141414887;

D. $658,189.21 seized from NuMedCare LLC., PNC Bank account #12-0438-7109;

E. $8,670.22 seized from NuMed Alliance Inc. PNC Bank account #12-0438-7029;

F. $5,819.14 seized from NuMed Leasing Inc., PNC Bank account #12-1545-8865;

G. $5,273.75 seized from NuMedCare LLC., PNC Bank account #12-1651-2472;

H. $100,192.85 seized from NuMedCare LLC., PNC Bank account #12-0438-7192;

I. $85,504.05 seized from NuMed API LLC., PNC Bank account #12-0438-7117;

J. $97,436.05 seized from NuMed RX LLC., PNC Bank account #12-0438-6747;

K. $10,025.32 seized NM Venture Group LLC., from PNC Bank account #12-0438-6253;

L. $39,781.27 seized from NuMed Property LLC., PNC Bank account #12-0438-7096;

M. $991.26 seized from NuMed Entertainment LLC., PNC Bank account #12-1545-8806;

N. $952.00 seized from C Boca Capital LLC., PNC Bank account #12-1545-8881;

O. $45,347.46 seized from Carroll, Clifford B. Carroll and Kader BB&T Bank account #1100004823158;

P. $39,728.44 seized from NuMedCare LLC., JP Morgan Chase Bank account #522675318;

Q. $635,931.78 seized from the RX of Boca, LLC., PNC Bank account #12-0438-7133;

R. $2,982.83 seized from the RX of Boca, LLC., PNC Bank account # 12-1880-9691; and

S. $87,420.92 seized from the C&B Property Management, Inc., Wells Fargo account #2000049752184.

2.     If any of the property described above, as a result of any act or omission of

defendants **CHRISTOPHER MUCHA, KYLE O'BRIEN, IAN FLASTER, WILLIAM**

**EARL, FREDERICK THOMAS GIAMPA, PETER WILLIAMS, JOHN JOHNSON, and**

**BRETT NADEL:**

a.     cannot be located upon the exercise of due diligence;
b.     has been transferred or sold to, or deposited with, a third party;
c.     has been placed beyond the jurisdiction of the court;
d.     has been substantially diminished in value; or
e.     has been commingled with other property which cannot be divided without difficulty,

then the United States of America shall be entitled to forfeiture of substitute property pursuant to

Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code,

Section 2461(c).


WIFREDO A. FERRER
UNITED STATES ATTORNEY

PAUL F. SCHWARTZ
ASSISTANT UNITED STATES ATTORNEY

JEFFREY KAPLAN
ASSISTANT UNITED STATES ATTORNEY

32

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**UNITED STATES OF AMERICA**

**CASE NO.** _____

**vs.**

**CLIFFORD CARROLL, et al,**   **CERTIFICATE OF TRIAL ATTORNEY\***

_____ **Defendants. /**

**Court Division:** (Select One)

New Defendant(s) _____ Yes _____ No
Number of New Defendants _____
Total number of counts _____

Miami _____   Key West _____
FTL   √   WPB _____   FTP _____

I do hereby certify that:

1.    I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.    I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.    Interpreter:  (Yes or No)   No
   List language and/or dialect   English

4.    This case will take   0   days for the parties to try.

5.    Please check appropriate category and type of offense listed below:

(Check only one)

| | | | | (Check only one) | |
|---|---|---|---|---|---|
| I | 0 to 5 days | X | | Petty | |
| II | 6 to 10 days | | | Minor | |
| III | 11 to 20 days | | | Misdem. | |
| IV | 21 to 60 days | | | Felony | X |
| V | 61 days and over | | | | |

6.    Has this case been previously filed in this District Court?   No   (Yes or No)
If yes:
Judge: _____   Case No. _____
   (Attach copy of dispositive order)

Has a complaint been filed in this matter?   _____ (Yes or No) No X
Magistrate Case No. _____
Related Miscellaneous numbers: _____
Defendant(s) in federal custody as of _____
Defendant(s) in state custody as of _____
Rule 20 from the District of _____

Is this a potential death penalty case?   _____ (Yes or No)   No

7.    Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003? _____ Yes   √   No

8.    Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007? _____ Yes   √   No

_____
Jeffrey N. Kaplan
Assistant United States Attorney
Court No. A5500030

Penalty Sheet(s) attached

REV 4/8/08

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:** **CLIFFORD CARROLL**

**Case No:** _____

Count #: 1

Conspiracy to Commit Racketeering Activity

Title 18, United States Code, Section 1962(d)

**\* Max. Penalty:**           20 years' imprisonment, $250,000 fine; 3 years' supervised release

Count #: 5

Filing False Tax Return

Title 26, United States Code, Section 7206(1)

**\*Max. Penalty:**           3 years' imprisonment, $250,000 fine, 1 year supervised release

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms or forfeitures that may be applicable.

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name**: **TODD STEPHENS**

**Case No**: _____

Count #: 2

Conspiracy to Launder Monetary Instruments

Title 18, United States Code, Section 1956(h)

**\* Max. Penalty:**          10 years' imprisonment; The greater of $250,000 or not more than twice the amount of the criminally derived property involved in the transaction; 3 years' supervised release

*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms or forfeitures that may be applicable.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**: **TIM CLINTON**

**Case No**: _____

Count #: 2

Conspiracy to Launder Monetary Instruments

Title 18, United States Code, Section 1956(h)

**\* Max. Penalty:**          10 years' imprisonment; The greater of $250,000 or not more than twice the amount of the criminally derived property involved in the transaction; 3 years' supervised release

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**: <u>**MICHAEL KENNA**</u>

**Case No**: _____

Count #: 2

<u>Conspiracy to Launder Monetary Instruments</u>

<u>Title 18, United States Code, Section 1956(h)</u>

**\* Max. Penalty:**          10 years' imprisonment; The greater of $250,000 or not more than twice the amount of the criminally derived property involved in the transaction; 3 years' supervised release

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name**: __JOEL MCDERMOTT__

**Case No**: _____

Count #: 2

Conspiracy to Launder Monetary Instruments

Title 18, United States Code, Section 1956(h)

**\* Max. Penalty:**         10 years' imprisonment; The greater of $250,000 or not more than twice the amount of the criminally derived property involved in the transaction; 3 years' supervised release

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms or forfeitures that may be applicable.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

<u>PENALTY SHEET</u>

**Defendant's Name: <u>TODD HANSON</u>**

**Case No**: _____

Count #: 2

<u>Conspiracy to Launder Monetary Instruments</u>

<u>Title 18, United States Code, Section 1956(h)</u>

**\* Max. Penalty:**    10 years' imprisonment; The greater of $250,000 or not more than twice the amount of the criminally derived property involved in the transaction; 3 years' supervised release

Count #: 4

<u>False Statements</u>

<u>Title 18, United States Code, Section 1001(a)(1)</u>

**\* Max. Penalty:**    5 years' imprisonment; $250,000 fine, 3 years' supervised release

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms or forfeitures that may be applicable.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name: LISA GOLDBERG**

**Case No**: _____

Count #: 2

Conspiracy to Launder Monetary Instruments

Title 18, United States Code, Section 1956(h)

**\* Max. Penalty:**       10 years' imprisonment; The greater of $250,000 or not more than
twice the amount of the criminally derived property involved in the
transaction; 3 years' supervised release

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments,
parole terms or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name: <u>CHRISTOPHER MUCHA</u>**

**Case No**: _____

Count #: 3

Conspiracy to Commit Mail Fraud and Wire Fraud

Title 18, United States Code, Section 371

**\* Max. Penalty:**            5 years' imprisonment, $250,000 fine, 3 years' supervised release

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments,
parole terms or forfeitures that may be applicable.

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name: <u>IAN FLASTER</u>**

**Case No:** _____

Count #: 3

Conspiracy to Commit Wire Fraud and Wire Fraud

Title 18, United States Code, Section 371

**\* Max. Penalty:**           5 years' imprisonment, $250,000 fine, 3 years' supervised release

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments,
parole terms or forfeitures that may be applicable.

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name: <u>KYLE O'BRIEN</u>**

**Case No**: _____

Count #: 3

<u>Conspiracy to Commit Mail Fraud and Wire Fraud</u>

<u>Title 18, United States Code, Section 371</u>

**\* Max. Penalty:**          5 years' imprisonment, $250,000 fine, 3 years' supervised release

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments,
 parole terms or forfeitures that may be applicable.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name: <u>RHETT GORDON</u>**

**Case No**: _____

Count #: 3

Conspiracy to Commit Mail Fraud and Wire Fraud

Title 18, United States Code, Section 371

**\* Max. Penalty:**            5 years' imprisonment, $250,000 fine, 3 years' supervised release

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name: <u>WILLIAM EARL</u>**

**Case No:** _____

Count #: 3

<u>Conspiracy to Commit Mail Fraud and Wire Fraud</u>

<u>Title 18, United States Code, Section 371</u>

**\* Max. Penalty:**         5 years' imprisonment, $250,000 fine, 3 years' supervised release

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments,
parole terms or forfeitures that may be applicable.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name: <u>FREDERICK THOMAS GIAMPA</u>**

**Case No**: _____

Count #: 3

Conspiracy to Commit Mail Fraud and Wire Fraud

Title 18, United States Code, Section 371

**\* Max. Penalty:**          5 years' imprisonment, $250,000 fine, 3 years' supervised release

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments,
parole terms or forfeitures that may be applicable.

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name: PETER WILLIAMS**

**Case No:** _____

Count #: 3

Conspiracy to Commit Mail Fraud and Wire Fraud

Title 18, United States Code, Section 371

**\* Max. Penalty:**          5 years' imprisonment, $250,000 fine, 3 years' supervised release

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name**: **JOHN JOHNSON**

**Case No**: _____

Count #: 3

Conspiracy to Commit Mail Fraud and Wire Fraud _____

Title 18, United States Code, Section 371 _____

**\* Max. Penalty:**            5 years' imprisonment, $250,000 fine, 3 years' supervised release

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments,
parole terms or forfeitures that may be applicable.

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name**: **BRETT NADEL**

**Case No**: _____

Count #: 3

Conspiracy to Commit Mail Fraud and Wire Fraud

Title 18, United States Code, Section 371

**\* Max. Penalty:**          5 years' imprisonment, $250,000 fine, 3 years' supervised release

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms or forfeitures that may be applicable.

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
### for the
Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. |
| CLIFFORD CARROLL, | ) | |
| | ) | |
| *Defendant* | ) | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year.  I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

_____
*Printed name of defendant's attorney*

_____
*Judge's signature*

_____
United States Magistrate Judge
*Judge's printed name and title*

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | Case No. |
| v. | ) | |
| TODD STEPHENS, | ) | |
| | ) | |
| *Defendant* | ) | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year.  I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

_____
*Printed name of defendant's attorney*

_____
*Judge's signature*

_____
United States Magistrate Judge
*Judge's printed name and title*

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | Case No. |
| v. | ) | |
| TIM CLINTON, | ) | |
| | ) | |
| _Defendant_ | ) | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year.  I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
_Defendant's signature_

_____
_Signature of defendant's attorney_

_____
_Printed name of defendant's attorney_

_____
_Judge's signature_

United States Magistrate Judge
_Judge's printed name and title_

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
### for the
Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. |
| MICHAEL KENNA, | ) | |
| | ) | |
| _____ | ) | |
| *Defendant* | | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

_____
*Printed name of defendant's attorney*

_____
*Judge's signature*

United States Magistrate Judge
*Judge's printed name and title*

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No. |
| JOEL MCDERMOTT, | ) | |
| | ) | |
| *Defendant* | ) | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year.  I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*


_____
*Signature of defendant's attorney*


_____
*Printed name of defendant's attorney*


_____
*Judge's signature*

United States Magistrate Judge
*Judge's printed name and title*

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | Case No. |
| v. | ) | |
| TODD HANSON, | ) | |
| | ) | |
| *Defendant* | ) | |

## WAIVER OF AN INDICTMENT

    I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year.  I was advised in open court of my rights and the nature of the proposed charges against me.

    After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

_____
*Printed name of defendant's attorney*

_____
*Judge's signature*

United States Magistrate Judge
*Judge's printed name and title*

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT

for the
Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. |
| LISA GOLDBERG, | ) | |
| | ) | |
| _____ | ) | |
| *Defendant* | | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*


_____
*Signature of defendant's attorney*


_____
*Printed name of defendant's attorney*


_____
*Judge's signature*

_____
United States Magistrate Judge
*Judge's printed name and title*

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
### for the
Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. |
| CHRISTOPHER MUCHA, | ) | |
| | ) | |
| _Defendant_ | ) | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year.  I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.


Date: _____

_____
_Defendant's signature_


_____
_Signature of defendant's attorney_


_____
_Printed name of defendant's attorney_


_____
_Judge's signature_

United States Magistrate Judge
_Judge's printed name and title_

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. |
| IAN FLASTER, | ) | |
| | ) | |
| _Defendant_ | ) | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
_Defendant's signature_

_____
_Signature of defendant's attorney_

_____
_Printed name of defendant's attorney_

_____
_Judge's signature_

United States Magistrate Judge
_Judge's printed name and title_

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
## for the
### Southern District of Florida

| United States of America | ) | |
| v. | ) | Case No. |
| KYLE O'BRIEN, | ) | |
| | ) | |
| *Defendant* | ) | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

_____
*Printed name of defendant's attorney*

_____
*Judge's signature*

_____United States Magistrate Judge___
*Judge's printed name and title*

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
### for the
Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. |
| RHETT GORDON, | ) | |
| | ) | |
| *Defendant* | ) | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*


_____
*Signature of defendant's attorney*


_____
*Printed name of defendant's attorney*


_____
*Judge's signature*

_____
United States Magistrate Judge
*Judge's printed name and title*

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No. |
| WILLIAM EARL, | ) | |
| | ) | |
| *Defendant* | ) | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

_____
*Printed name of defendant's attorney*

_____
*Judge's signature*

_____
United States Magistrate Judge
*Judge's printed name and title*

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) | |
| v. | ) | Case No. |
| FREDERICK THOMAS GIAMPA, | ) | |
| | ) | |
| *Defendant* | ) | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

_____
*Printed name of defendant's attorney*

_____
*Judge's signature*

_____
United States Magistrate Judge
*Judge's printed name and title*

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
### for the
Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | Case No. |
| v. | ) | |
| PETER WILLIAMS | ) | |
| | ) | |
| _Defendant_ | ) | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year.  I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
_Defendant's signature_

_____
_Signature of defendant's attorney_

_____
_Printed name of defendant's attorney_

_____
_Judge's signature_

_____
United States Magistrate Judge
_Judge's printed name and title_

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
## for the
### Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. |
| JOHN JOHNSON | ) | |
| | ) | |
| _____ | ) | |
| *Defendant* | | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

_____
*Printed name of defendant's attorney*

_____
*Judge's signature*

_____
United States Magistrate Judge
*Judge's printed name and title*

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
### for the
Southern District of Florida

| United States of America | ) | Case No. |
| v. | ) | |
| BRETT NADEL | ) | |
| | ) | |
| _Defendant_ | ) | |

### WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year.  I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
_Defendant's signature_

_____
_Signature of defendant's attorney_

_____
_Printed name of defendant's attorney_

_____
_Judge's signature_

United States Magistrate Judge
_Judge's printed name and title_

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NUMBER: _____

### <u>BOND RECOMMENDATION</u>

DEFENDANT: CLIFFORD CARROLL _____

$250,000 Personal Surety Bond, Co-Signers & Home Confinement
(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _____
(AUSA)  Jeffrey N. Kaplan

Last Known Address: N/A _____

_____

_____

What Facility: N/A _____

_____

Agent(s): DEA S/A Yasmany Cepero _____
(FBI)   (SECRET SERVICE)   (DEA)   (IRS)   (ICE)   (**OTHER**)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NUMBER: _____

### **BOND RECOMMENDATION**

DEFENDANT: TODD STEPHENS _____

$250,000 Personal Surety Bond, Co-Signers & Home Confinement
(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _____
AUSA: Jeffrey N. Kaplan

Last Known Address: N/A _____

_____

_____

What Facility: N/A _____

_____

Agent(s): DEA S/A Yasmany Cepero _____
(FBI)   (SECRET SERVICE)   (DEA)   (IRS)   (ICE)   (**OTHER**)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: _____

### BOND RECOMMENDATION

DEFENDANT: TIM CLINTON _____

$250,000 Personal Surety Bond _____
(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _____
ᴀUSA:   Jeffrey N. Kaplan

Last Known Address: N/A _____

_____

_____

What Facility: N/A _____

_____

Agent(s): DEA S/A Yasmany Cepero _____
(FBI)   (SECRET SERVICE)   (DEA)   (IRS)   (ICE)   (**OTHER**)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: _____

### BOND RECOMMENDATION

DEFENDANT: MICHAEL KENNA _____

$250,000 Personal Surety Bond _____

(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _____

AUSA: Jeffrey N. Kaplan

Last Known Address: N/A _____

_____

_____

What Facility: N/A _____

_____

Agent(s): DEA S/A Yasmany Cepero _____

(FBI)   (SECRET SERVICE)   (DEA)   (IRS)   (ICE)   (**OTHER**)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NUMBER: _____

### <u>BOND RECOMMENDATION</u>

DEFENDANT: JOEL MCDERMOTT _____

$250,000 Personal Surety Bond, Co-Signers & Home Confinement
(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _____

AUSA:   Jeffrey N. Kaplan

Last Known Address: N/A _____

_____

_____

What Facility: N/A _____

_____

Agent(s):   DEA S/A Yasmany Cepero _____
(FBI)   (SECRET SERVICE)   (DEA)   (IRS)   (ICE)   (**OTHER**)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NUMBER: _____

### <u>BOND RECOMMENDATION</u>

DEFENDANT: TODD HANSON _____

$250,000 Personal Surety Bond, Co-Signers & Home Confinement
(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _____

AUSA:  Jeffrey N. Kaplan

Last Known Address: N/A _____

_____

_____

What Facility: N/A _____

_____

Agent(s): DEA S/A Yasmany Cepero _____
(FBI)   (SECRET SERVICE)   (DEA)   (IRS)   (ICE)   (**OTHER**)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NUMBER: _____

### <u>BOND RECOMMENDATION</u>

DEFENDANT: LISA GOLDBERG _____

$250,000 Personal Surety Bond _____
(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _____

AUSA: Jeffrey N. Kaplan

Last Known Address: N/A _____

_____

_____

What Facility: N/A _____

_____

Agent(s): DEA S/A Yasmany Cepero _____
(FBI)   (SECRET SERVICE)   (DEA)   (IRS)   (ICE)   (**OTHER**)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NUMBER: _____

### BOND RECOMMENDATION

DEFENDANT: CHRISTOPHER MUCHA

$200,000 Personal Surety Bond

(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _____

AUSA   Jeffrey N. Kaplan

Last Known Address: N/A

What Facility: N/A

Agent(s): DEA S/A Yasmany Cepero

(FBI)   (SECRET SERVICE)   (DEA)   (IRS)   (ICE)   (**OTHER**)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: _____

### <u>BOND RECOMMENDATION</u>

DEFENDANT: IAN FLASTER _____

    $200,000 Personal Surety Bond _____

    (Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _____

AUSA: Jeffrey N. Kaplan

Last Known Address: N/A _____

_____

_____

What Facility: N/A _____

_____

Agent(s): DEA S/A Yasmany Cepero _____

(FBI)   (SECRET SERVICE)   (DEA)   (IRS)   (ICE)   (**OTHER**)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**CASE NUMBER:** _____

### BOND RECOMMENDATION

DEFENDANT: KYLE O'BRIEN _____

$200,000 Personal Surety Bond _____
(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _____
AUSA:  / Jeffrey N. Kaplan

Last Known Address: N/A _____

_____

_____

What Facility: N/A _____

_____

Agent(s): DEA S/A Yasmany Cepero _____
(FBI)   (SECRET SERVICE)   (DEA)   (IRS)   (ICE)   (**OTHER**)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: _____

### BOND RECOMMENDATION

DEFENDANT: RHETT GORDON _____

$200,000 Personal Surety Bond _____
(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _____
AUSA: Jeffrey N. Kaplan

Last Known Address: N/A _____

_____

_____

What Facility: N/A _____

_____

Agent(s): DEA S/A Yasmany Cepero _____
(FBI)   (SECRET SERVICE)   (DEA)   (IRS)   (ICE)   (**OTHER**)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**CASE NUMBER:** _____

## <u>BOND RECOMMENDATION</u>

DEFENDANT: <u>WILLIAM EARL</u>

<u>$200,000 Personal Surety Bond</u>
(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _____
AUSA;   Jeffrey N. Kaplan

Last Known Address: <u>N/A</u>

_____

_____

What Facility: <u>N/A</u>

_____

Agent(s): <u>DEA S/A Yasmany Cepero</u>
(FBI)   (SECRET SERVICE)   (DEA)   (IRS)   (ICE)   (**OTHER**)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: _____

### BOND RECOMMENDATION

DEFENDANT: FREDERICK THOMAS GIAMPA _____

$200,000 Personal Surety Bond _____
(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _____
AUSA:   Jeffrey N. Kaplan

Last Known Address: N/A _____

_____

_____

What Facility: N/A _____

_____

Agent(s): DEA S/A Yasmany Cepero _____
(FBI)   (SECRET SERVICE)   (DEA)   (IRS)   (ICE)   (**OTHER**)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: _____

## **BOND RECOMMENDATION**

DEFENDANT: PETER WILLIAMS _____

$200,000 Personal Surety Bond _____
(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _____
(AUSA)   Jeffrey N. Kaplan

Last Known Address: N/A _____

_____

_____

What Facility: N/A _____

_____

Agent(s): DEA S/A Yasmany Cepero _____
(FBI)   (SECRET SERVICE)   (DEA)   (IRS)   (ICE)   (**OTHER**)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: _____

### BOND RECOMMENDATION

DEFENDANT: JOHN JOHNSON _____

$200,000 Personal Surety Bond _____
(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _____
AUSA: Jeffrey N. Kaplan

Last Known Address: N/A _____

_____

_____

What Facility: N/A _____

_____

Agent(s): DEA S/A Yasmany Cepero _____
(FBI)   (SECRET SERVICE)   (DEA)   (IRS)   (ICE)   (**OTHER**)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NUMBER: _____

### BOND RECOMMENDATION

DEFENDANT: BRETT NADEL _____

$200,000 Personal Surety Bond _____

(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _____

AUSA:  Jeffrey N. Kaplan

Last Known Address: N/A _____

_____

What Facility: N/A _____

_____

Agent(s): DEA S/A Yasmany Cepero _____

(FBI)   (SECRET SERVICE)   (DEA)   (IRS)   (ICE)   (**OTHER**)